Christian County Court vs. Rankin & Tharp.

CASE 40—PETITION ORDINARY—JUNE 27.

# Christian County Court vs. Rankin & Tharp.

APPEAL FROM CHRISTIAN CIRCUIT COURT.

1. The belligerent right to capture or destroy public or private property of the belligerent's enemy, whenever doing so will strengthen the captor or weaken his enemy, is not unlimited. The laws of the civilized world exempt from capture or destruction such public property as court-houses and the property of literary institutions, unless used for some military purpose by the captor's enemy, in which case they may be legally destroyed.

2. Soldiers cannot justify the doing of an act not legitimately an act of war by showing that they did it by command of their superior officers. (2 *Cranch.*, 170; 13 *How.*, 113.)

3. In a war between independent sovereignties, an abuse of belligerent power by soldiers in the service of their nation cannot be inquired into by the judiciary of the other; but this rule does not apply to a domestic war between the people of the same nation.

4. Confederate soldiers are liable for trespasses committed in violation of the laws of war, though commanded by their superior officers. And there is nothing in the Federal Constitution which prohibits the State judiciary from deciding whether the act complained of was authorized by international law or not.

5. The act of 22d February, 1864, providing "a civil remedy for injuries done by disloyal persons" (*Myers' Suppl.*, 1–2), does not, so far as it applies to soldiers, intentionally or constitutionally extend to *belligerent* acts, but embraces only trespasses and spoliations committed by them in their own individual right and for their own benefit.

6. An action for the unlawful burning of a court-house may be maintained in the name of the county.

LANDES & RITTER and H. A. PHELPS, for appellants, cited *Civ. Code*, secs. 120, 121, 28, 161; 3 *Met.*, 61; 1 *Rev. Stat.*, 327; 2 *Ib.*, 222; *Sess. Acts*, 1863–4, *pp.* 121, 122; *Vat. Law of Nations*, book 3, ch. 8, sec. 137; ch. 9, secs. 166 to 168; *Polson's Law of Nations*, sec. 6, pp. 42–3; *Wheat. Int. Law*, p. 618.

J. W. McPHERSON, for appellees, cited *Wheat. Int. Law*, *Suppl.*, pp. 31, 520; *Vatt.*, book 3, ch. 18, secs. 290–5.

L. W. TRAFTON, on same side, cited 2 *Black's Rep. Prize Cases*, 666 to 674; *Wheat. Int. Law*, p. 342; 3 *Wheat.*, 366; 4 *Wheat.*, 392; 1 *Duvall*, 182.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

The court-house of Christian county having been burnt down by a band of Confederate soldiers under the command of General Lyon, the appellant sued the appellees for damages, alleging that they, as Confederate soldiers, aided in the combustion.

The appellees demurred to the petition on the specific ground that its allegations are insufficient for the maintenance of the action. The circuit court sustained the demurrer, and rejected five successive amendments offered for substituting other plaintiffs, among which were the county of Christian in one amendment, and the Commonwealth of Kentucky and said county, for the use of the latter, in another amendment.

As the demurrer waived all objection to the character of the plaintiff, we could not affirm the judgment if the petition show a maintainable cause of action in any name, even though the county of Christian, as a *quasi* corporation, owning the court-house, or the Commonwealth, incidentally interested for the use of the county, would have been a more appropriate plaintiff. ( *Code of Practice*, sec. 120 and sec. 121; *and Lee vs. Waller*, 3d *Metcalfe's Reports*, 61.)

But, to avoid all ultimate hazard, the circuit court ought to have admitted one of the two amendments just indicated as proper. None of the rejected amendments would have changed the identity of the cause of action, or the essential character of the action, or the amount or destination of the damages, which, in whatever name recovered, would go to the county, to be appropriated to its use by its county court.

But the personal liability of the appellees as trespassers, and the jurisdiction of the court to enforce it by civil remedy, are radical questions, both new and rather difficult.

The petition constructively imports that, in assisting to destroy the court-house, the appellees acted as belligerents under the supposed license of the assumed Confederacy, and for its cause alone, and not for their own individual benefit. And, if it were a lawful act of belligerence, they are not responsible for damages; for the rebellion having matured.

into a civil war, in which the organized rebels were recognized, at home and abroad, as belligerents, they had, while the war continued, all the military rights, as to means and modes of prosecuting it, which the laws of nations concede to international belligerents. Among these lawful means conceded by the voluntary law of nations, are the destruction and capture of public and private property for benefiting the captor or weakening the enemy. But this right is not unlimited. The modern law of nations, now authoritatively settled and wisely recognized throughout the civilized world, excepts from capture or destruction such public property as court-houses, churches, and property of literary institutions, unless used for some military purpose by the captor's enemy. In support of this position, the authorities are so abundant and concurrent as to dispense with any particular citations.

In the absence of any proof or allegation to the contrary, the court-house in this case should be, *prima facie*, presumed to have been, according to its dedication, kept and used for civil purposes exclusively; and, therefore, this, though not explicitly alleged in the petition, should be held as admitted by the demurrer. If, at the time of the burning, it was used for any military purpose, such as Federal barracks or barricades, or the repository of Federal arms or munitions, or was occupied by Federal troops as a temporary fortress, the destruction of it might have been a lawful belligerent act. But, if any of these justifying facts existed, they ought to have been pleaded. And, consequently, considering, as we now must, only the sufficiency of the petition, we adjudge that it shows that the burning of the court-house was unlawful and indefensible on the plea of belligerent right. The petition does not clearly show whether the wrongful act was done spontaneously by the burners or under an order by a superior officer. But this is not essential, because an unlawful act cannot be justified by an unlawful authority or command to do it. In this, both principle and authority concur. (*Little and others vs. Bareme and others*, 2d *Cranch*, 170; *Mitchell vs. Harmony*, 13th *Howard*, 113.)

Christian County Court vs. Rankin & Tharp.

Then, according to the legal effect of the petition, the appellees were trespassers, and are personally responsible for the wanton damage they did.

And why may not that responsibility be enforced by the judiciary of the place where the wrong was done?

Had the war been international between two independent sovereignties it might be true, as argued, that for an unlawful abuse of belligerent power by the appellees in the cause of their nation, the only proper remedy would have been an appeal to their government. But the reason for that rule does not apply to a domestic war between the people of the same nation, who have but one and the same national government.

In this case the citizens of the Confederate States were still, nevertheless, citizens of the " United States," whose government had never recognized the *pseudo* " Confederacy " as a sovereign nationality, and an appeal to it by our only national government for redress for wrongs done by its soldiers would have been not only unnecessary and unavailing, but also a suicidal acknowledgment of its national sovereignty and independence; and now, especially, since the war has closed and stripped the revolting States of all pretense of local nationality and independence, there is certainly no " *Confederacy*" to which our government, which is also their government, could appeal for acknowledgment and indemnity.

Consequently, there is either no remedy for the wrong, or it must be an action against the persons who did the wrong. There must be a remedy, and of that remedy the State judiciary has jurisdiction. There is nothing in the Federal Constitution which deprives a State court of power to decide a question of international law incidentally involved in a case over which it has jurisdiction; and for every wrong the common law of Kentucky provides an adequate remedy. To sustain this action, therefore, it is not necessary to invoke any statutory aid.

And we are of the opinion, moreover, that the act of February 22d, 1864, providing " a civil remedy for injuries done by disloyal persons " (*Session Acts, pp.* 120–1) does not, so far as it applies to " soldiers," intentionally or constitutionally

extend to belligerent acts, but embraces only trespasses and spoliations committed by soldiers in their own individual right and for their own personal benefit.

Wherefore, on international and common law principles, we adjudge that the petition in this case sets forth a good cause of action against the appellees, and that, consequently, the judgment of the circuit court on the demurrer was erroneous. That judgment is, therefore, reversed, and the cause remanded, with instructions to overrule the demurrer and admit the amendment making the county of Christian a plaintiff.